UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-22897-CIV-ALTONAGA/Brown

UNITED NATIONAL INSURANCE
COMPANY,

            Plaintiff,

vs.

BEST TRUSS COMPANY, *et al.*,

            Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on the Plaintiff, United National Insurance Company's

("United['s]") Motion for Summary Judgment ("Motion") [ECF No. 96], filed September 10, 2010.

The Court has carefully reviewed the parties' written submissions and applicable law.

## I.  BACKGROUND

The following is a summary of the undisputed facts presented by the Plaintiff, United (*see*

Pl.'s Statement of Undisputed Material Facts ("SMF") [ECF No. 94]), and by the Defendant, Best

Truss Company ("Best Truss") (*see* Def.'s Statement of Material Facts as to Which There Exists a

Genuine Issue to be Tried ("SDF") [ECF No. 100]), in compliance with Local Rule 7.5(c), separately

numbered and supported by specific references to pleadings and discovery.[1]

United issued two general liability policies to Best Truss, a fabricator of wooden roof trusses:

Policy No. L 7157849 with a policy term from December 11, 2001 to December 11, 2002 (the "First

---

[1]  In its Reply, United does not dispute any of the additional facts presented by Best Truss.  (*See*
Reply [ECF No. 101]).

Case No. 09-22897-CIV-ALTONAGA/Brown

Policy") and Policy No. L 7166170 with a policy term from December 11, 2002 to December 11, 2003 (the "Second Policy"). The policies include the following provisions:

1. Insuring Agreement

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend an insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

> *   *   *

> b. This insurance applies to "bodily injury" and "property damage" only if:

>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

>> (2) The "occurrence" results, during the policy term, in "bodily injury" or "property damage."

(Am. Compl. Ex. A 7 [ECF No. 31-1]; *id.* Ex. B 15 [ECF No. 31-3]). "Property damage" is defined by the policies as "physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it." (*Id.* Ex. A 29; *id.* Ex. B 14). The policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* Ex. A 28; *id.* Ex. B 15).

Pursuant to a contract signed in August 2001 between Best Truss and All-Miami Contracting ("All-Miami"), Best Truss fabricated and delivered trusses that were used in the construction of a new Amtrust Bank ("Amtrust") building in Sunrise, Florida in late 2001. An additional truss was provided by Best Truss in January 2002 pursuant to a supplemental contract. The trusses were

2

Case No. 09-22897-CIV-ALTONAGA/Brown

installed in the bank building by All-Miami during the last week of December 2001 and the first three weeks of January 2002.  The Certificate of Occupany was issued for the building on February 28, 2003.

Sometime in 2007, the facilities manager for Amtrust, David Delgado ("Delgado"), was told of and observed a "clearly visible" crack in an interior soffit of the bank building.  (SMF ¶ 19).  Amtrust hired architects to investigate the crack and recommend methods to repair the damage.  The architectural report, rendered in June 2007, indicates there was crushed and cracked gypsum board, and suggests the damage was related to the manner in which the soffits were attached to the bottom chords of the trusses, which could not be seen.  The building was constructed such that the trusses were inaccessible and not visible from inside the building as they were enclosed by a ceiling of sheetrock, the "true" ceiling.  Below the true ceiling was a "drop" ceiling and the area between the two ceilings was used to conceal air conditioning ducts and cables.  The hanging soffits were situated below the level of the drop ceiling and along the perimeter of the interior space.  The exterior finished roof of the building was made of ceramic tiles.

In February 2008, Delgado hired a general contractor to inspect the soffit area and provide a repair estimate because the soffit cracks had expanded to such an extent that the soffit showed a difference in height and was visibly sagging.  Cracks in the ceiling had also appeared in the area near the sagging soffit.  By the end of March 2008, the condition of the soffits became so severe that Delgado believed they might fall, so Amtrust hired a general contractor, GSD Contracting ("GSD"), to conduct an inspection of the ceiling and soffits.  During its April 2008 inspection, GSD observed the roof tiles were buckling in the middle of the roof on the back side of the building.  GSD then cut

3

Case No. 09-22897-CIV-ALTONAGA/Brown

a hole into the true ceiling in order to access and inspect the trusses.  GSD observed that a number of trusses had suffered physical damage and were coming apart at the gusset plates, causing the truss members to separate.

Prior to GSD's inspection, there was no access to or visibility of the truss area from within or without the building.  There is no evidence anyone accessed or viewed the area containing the trusses once construction was completed until April 2008.  As to the deflections in the roof, Alberto Sanchez, a maintenance man responsible for the building beginning in 2007, testified that his perception of the roof deflection was that it was likely an issue with improper roof installation, and he observed, "like it's always been there."  (Sanchez Dep. 50:24–51:10 [ECF No. 84]).  When Delgado determined in 2007 the roof needed pressure cleaning, he had not inspected or observed the back side of the roof because he "didn't have to."  (Delgado Dep. 111:18–112:13 [ECF No. 88]).

A structural engineer, John Ilter ("Ilter"), inspected the trusses in the building in June 2008.  He observed major deflections of up to three inches along a strip of the upper roof and "tooth pullout in the connector plates at the bottom chord end panel of the trusses.  The diagonal web on all trusses was completely pulled away from the truss bottom chord, causing the truss to sag as observed from the outside of the building."  (Ilter Aff. ¶ 6 [ECF No. 98]).  In Ilter's professional opinion, the "trusses were excessively loaded, causing failure of certain connector plates and truss members shortly after their installation at the time when the excessive loads were applied."  (*Id.* ¶ 9).  Ilter also opined:

> [A]lthough the damage caused by the overloading of the bottom chords was, in the end, visible from the exterior of the building as a deflection in the roof and from the interior space as the soffits sagged and cracked, the damage would have been visible

4

inside the attic space long before the time the exterior signs were evident, beginning around the time the excessive loads were applied to the bottom chords.

(*Id.* ¶ 11).

Subsequently, the damaged trusses themselves were repaired. Also repaired were other portions of the building damaged by the truss failure as well as areas of the building that had to be removed to repair the trusses.

On November 6, 2008, Amtrust[2] filed suit against several contractors including Best Truss, MHS Contracting, Inc. ("MHS"), All-Miami, and Remberto Contreras, P.E. ("Contreras") in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. 08054859 ("the state court action") for money damages stemming from allegedly defective trusses. United is participating in the defense of Best Truss in that case pursuant to a reservation of rights under the two policies. United filed the present case seeking a declaratory judgment that any damage claimed by Amtrust or its successor, the FDIC, against Best Truss did not occur until after the expiration of the Second Policy term, and United has no duty to indemnify or defend Best Truss in the state court action. (*See* Am. Compl. ¶¶ 24–27 [ECF No. 31]). United now seeks summary judgment on Count I of the Amended Complaint, which seeks a declaration that Best Truss is precluded from coverage under both policies because any property damage did not occur during either policy term. (*See* Mot. 1).

---

[2] The Federal Deposit Insurance Corporation (the "FDIC") has been substituted as the plaintiff in the construction/product liability state court action following the FDIC's take-over of Amtrust on December 4, 2009. (*See* Mem. 2 [ECF No. 95]). The FDIC has also been substituted in this action. (*See* Jan. 29, 2010 Order [ECF No. 63]).

Case No. 09-22897-CIV-ALTONAGA/Brown

## II.  LEGAL STANDARD

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.  Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"For factual issues to be considered genuine, they must have a real basis in the record . . . mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citations omitted).  The

moving party "always bears the initial responsibility of informing the district court of the basis for

its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence

of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary

judgment is proper "against a party who fails to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Id.* at 322. In those cases, there is no genuine issue of material fact "since a complete failure

of proof concerning an essential element of the nonmoving party's case necessarily renders all other

facts immaterial." *Id.* at 323.

### III. ANALYSIS

United moves for summary judgment on Count I of its Amended Complaint on grounds the

property damage claimed by FDIC/Amtrust against Best Truss occurred after the expiration of the

Second Policy. (*See* Mot. 4). "'It is well-established that in order to trigger coverage under an

insurance policy, the accident or injury must occur during the time period of coverage.'" *Assr. Co.*

*of Am. v. Lucas Waterproofing Co., Inc.*, 581 F. Supp. 2d 1201, 1206 (S.D. Fla. 2008) (quoting *N.*

*River Ins. Co. v. Broward Cnty. Sheriff's Office*, 428 F. Supp. 2d 1284, 1288 (S.D. Fla. 2006)). In

Florida, the accident or injury triggering coverage is deemed to have occurred "when property

damage manifests itself, not when the negligent act or omission giving rise to the damage occurs."

*Id.* (citing *N. River Ins. Co.*, 428 F. Supp. 2d at 1289); *see also Auto Owners Ins. Co. v. Travelers*

*Cas. & Sur. Co.*, 227 F. Supp. 2d 1248, 1266 (M.D. Fla. 2002) (explaining the trigger is the time the

damage manifests itself or is discovered). However, proof of discovery of the damage is not required

Case No. 09-22897-CIV-ALTONAGA/Brown

to trigger coverage if the damage was visible and capable of being discovered. *See Mid-Continent Cas. Co. v. Frank Casserino Constr.*, No. 6:09-cv-1065-Orl-31GJK, 2010 U.S. Dist. LEXIS 59636, at *17–18 (M.D. Fla. Jun. 16, 2010) (denying summary judgment to an insurer where the damage was not discovered until after expiration of the policy term but had nonetheless manifested itself within the policy term).

United maintains the damage to the building trusses manifested after the expiration of the Second Policy term. (*See* Mem. 12). In support of this assertion, United primarily relies on statements in the Expert Witness Report of John A. Ilter (the "Report" [ECF No. 93]), Best Truss's expert witness. (*See* Mem. 11). Ilter explains "the failure in the connector plates was evidenced by the excessive deflection in the truss system, which would have continually over time caused damage to other building materials which were ultimately visible as a deflection of the roof and cracks in the soffits."[3] (Report 4). Because the "cracks in the soffits were first observed and reported" in 2007 and the deflection in the roof was first observed in 2008, United contends the damage manifested after December 11, 2003, the expiration date of the Second Policy. (Mem. 11). Therefore, United asserts it is under no obligation to continue to defend Best Truss in the state court action. (*See id.*).

Best Truss does not dispute that the damage was first observed and reported in 2007, nor does it disagree that the initial discovery of the damage fell outside the coverage periods of the United policies. In response to the United's summary judgment motion, Best Truss submits Ilter's Affidavit

---

[3] United distinguishes Ilter's statements from the expert testimony in *Frank Casserino* by pointing out "Mr. Ilter does not opine or state anywhere in his Expert Report that any damage . . . was 'visible' or 'would have been visible,' . . . by any person under any circumstances during the United National [p]olicies' policy periods." (Mem. 12 (emphasis omitted)).

8

in which he clarifies his position regarding the manifestation of the damage.  (*See* Ilter Aff. 3).  Ilter

opines that "although the damage caused by the overloading of the bottom chords was, in the end,

visible from the exterior . . . the damage **would have been visible** inside the attic space long before

the time the exterior signs were evident, beginning around the time the excessive loads were applied

to the bottom chords" (*id.*), which would have been when the roofing system was initially installed.

Best Truss maintains Ilter's expert opinion as clarified in the Affidavit raises a question of material

fact as to whether the damage manifested during the Second Policy term.  Thus, Best Truss asserts

United's motion for summary judgment should be denied.  (*See* Opp'n 10–11[ECF No. 99]).[4]

In its Reply, United accuses Ilter of changing "his opinion to try to create a disputed material

issue of fact" and urges the Court to disregard the Affidavit.[5]  (Reply 5).  Contrary to United's

assertion, Ilter's statements in the Report and the Affidavit are not inconsistent.  Ilter's failure to

address in the Report the visibility of damage from within the attic does not render the later-filed

---

[4] Best Truss also maintains the "manifestation" standard does not apply to United's duty to defend, citing *Trizec Props., Inc. v. Baltimore Constr. Co., Inc.*, 767 F.2d 810, 813 (11th Cir. 1985).  (*See* Opp'n 6–7).  And because United makes no distinction in its Motion between its duty to defend and its duty to indemnify, Best Truss asserts the Motion must be denied.  (*See id.*).  Best Truss contends the duty to defend does not implicate the manifestation standard and only requires a showing of injury-in-fact.  (*See id.*).  In its Reply, United explains the judgment it seeks does not involve a "threshold 'duty to defend'" inquiry because it is already defending Best Truss in the underlying action and the declaration it seeks only deals with its duty to indemnify and to continue to defend. (Reply 1–3).

To decide United's Motion, the Court need not address whether bifurcation of coverage duties is warranted, whether the duty to defend is implicated, or whether the "manifestation" standard applies to cases involving the duty to defend.  Thus, the Court assumes without deciding that the "manifestation" standard applies to the determination of whether coverage was triggered.

[5] After filing this Motion, United filed two Motions in Limine [ECF Nos. 108, 111] to limit Ilter's testimony in the Affidavit. The Court denied both Motions because the case is set for a bench trial.  (*See* November 8, 2010 Order [ECF No. 113]).

Case No. 09-22897-CIV-ALTONAGA/Brown

Affidavit a sham.  The Court can properly consider the Affidavit in the disposition of the Motion. *See, e.g., Comer v. City of Palm Bay*, 171 F. Supp. 2d 1307, 1313 (M.D. Fla. 2000) (determining the alleged contradictions between an affidavit filed in conjunction with a motion and non-movant's deposition were not so egregious as to command the Court to disregard the later-filed affidavit).

Alternatively, United maintains the statements in the Affidavit statements do not create an issue of material fact and instead, suggests the statements are legally irrelevant.  (*See* Reply 6).  The thrust of United's argument is that manifestation requires "visibility to someone" and because the attic was inaccessible, it was "physically impossible" for anyone to have viewed the damage.  (*Id.* (emphasis omitted)).  United does not dispute the damage was visible from within the attic.  Instead, United claims visibility from within the enclosed attic is insufficient as a matter of law to constitute manifestation.  (*See id.*).

United, however, misreads the manifestation standard as espoused in *Frank Casserino*. There, the court determined damage that would have been visible "upon a prudent engineering investigation," *Frank Casserino*, 2010 U.S. Dist. LEXIS 59636, at *2, which required "the removal of certain components (e.g. building wrap, roofing and siding)," *id.* at *2 n.4, was manifest and triggered coverage.  Moreover, the court explained an expert's testimony was "the only means by which [the insured] can reasonably be expected to prove that there was 'property damage' during the policy period" because the damage was concealed.  *Id.* at *18.  Here, Best Truss's expert has opined that physical injury to the structure would have been visible save for physical obstructions.  Indeed, this case is "factually and legally on all fours" with *Frank Casserino*.  (Opp'n 11).  Contrary to United's assertion, visibility from within the enclosed and inaccessible attic does constitute

10

Case No. 09-22897-CIV-ALTONAGA/Brown

manifestation.   Through its expert, Best Truss has made a showing sufficient to establish the existence of an element essential to the case on which it bears the burden of proof at trial.   Thus, a genuine issue of material fact exists as to the manifestation of the damage and United is not entitled to summary judgment.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff, United National Insurance Company's Motion for Summary Judgment **[ECF No. 96]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 3rd day of December, 2010.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

11